# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

———————————————

No. 95-30991
(Summary Calendar)

———————————————

BONNIE WARD,

Plaintiff-Appellant,

versus

FLEMING COMPANIES, INC., ET AL.

Defendants,

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant-Appellee.

———————————————————————————————————

Appeal from United States District Court
for the Western District of Louisiana
(93-CV-962)

———————————————————————————————————

July 9, 1996

Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Bonnie Ward appeals the district court's judgment granting summary judgment to the

defendant Life Insurance Company of North America ("LINA"). Bonnie Ward asserts that the

district court erred in concluding that the insurance policy issued by LINA was a health and accident

———————————

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

policy rather than a life insurance policy and in holding that her husband was not covered by a grace period. For the following reasons, we affirm the judgment of the district court.

## FACTS

Bonnie Ward's husband, John Ward, was employed by Fleming Companies and/or its predecessor from April 5, 1976 until he resigned effective September 18, 1992. Fleming participated in a group personal accident insurance which was administered and underwritten by LINA. Mr. Ward paid the insurance through a payroll deduction system, in which Fleming deducted the premium from the first monthly paycheck Mr. Ward received. Mrs. Ward was the beneficiary of the insurance coverage. The day before Mr. Ward left his employment with Fleming, he had an exit interview with the head of Human Resources at Fleming, Sue Leblanc. Subsequent conversations between Mr. and Mrs. Ward left Mrs. Ward with the understanding that her husband had continued his insurance coverage through his conversations with Leblanc and through completion of the documents he received during the exit interview.

Mr. Ward died in a car accident on October 23, 1992. Only then did Mrs. Ward discover that Mr. Ward had not converted his group policy to an individual policy. Mrs. Ward sued to recover the benefits under the LINA policy. The district court granted LINA's motion for summary judgment. The district court held that the LINA policy cannot be classified as a life insurance policy under Louisiana law. The court further held that the grace period established in the LINA policy could not apply because it ran from the date of the last premium payment rather than termination of the policy. Mrs. Ward timely appealed.

**DISCUSSION**

**A.    *STANDARD OF REVIEW.***

We review the granting of a motion for summary judgment de novo.  Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451 (5th Cir. 1995); see also  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment shall be granted if the record, taken as a whole, "together with the affidavits, if any, show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56.

Resolution of this case rests on a legal question rather than a factual controversy.  It is undisputed that John Ward died before converting the group policy to an individual policy, that he terminated his employment with Fleming effective September 18, 1992, and that the last insurance premium was paid via a payroll deduction September 5, 1992.  The question remaining is whether Mrs. Ward, nevertheless, is entitled to coverage based upon default insurance provisions existing by law or based upon specific provisions in the LINA policy.  We must review this legal issue de novo. See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 987 (5th Cir. 1992) (explaining that a district court's interpretation of a state statute is reviewed de novo); and Jones v. Southern Marine & Aviation Underwriters, Inc., 888 F.2d 358, 360 (5th cir. 1989) (explaining that the construction and effect of an insurance policy are matters of law reviewed de novo).

The legal issue presents questions of statutory construction of Louisiana insurance law.  For this reason, Mrs. Ward asks us to certify the question to the Louisiana Supreme Court.  The need to interpret a state statute, by itself, does not preclude us from deciding the case.  It merely warns us to proceed with caution to ensure that our decision reflects the views of the Louisiana Supreme Court

3

rather than our own view. It is well established that the federal court is bound to answer the question the way the state's highest court would resolve the issue. See Transcontinental Gas, 953 F.2d at 988. When addressing a different insurance issue, this Court in Graham v. Milky Way Barge, Inc., 824 F.2d 376, 381 (5th Cir. 1987) explained as follows:

> When the state courts have not yet decided a particular question, the duty of the federal court is to decide what the state courts would hold if faced with that issue. . . . In making this determination it is our duty . . . to view ourselves . . . as an inferior state court and to reach the decision that we think a state court would reach. . . . As a federal court, it is not for us to adopt innovative theories of state law, but simply to apply the law as it currently exists. . . . If the law of Louisiana is to be changed, it is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state.

(citations, brackets, and quotations omitted). Accordingly, we must interpret the applicable provisions of Louisiana law the way that the Louisiana Supreme Court logically would interpret the statutes.

In attempting to predict the Louisiana Supreme Court's interpretation, we may look to prior decisions from this court, Louisiana appellate decisions, legislation, and relevant commentary. See Transcontinental Gas, 953 F.2d at 988. Contrary to LINA's suggestion, we are not bound by the decisions of the Louisiana appellate courts, especially where the appellate courts are divided on the issue. See id.; compare Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 909 n.4 (5th Cir. 1985) (noting that it was bound because the appellate court had clearly and correctly spoken on the issue). Observing these guidelines, we will interpret Louisiana insurance law to determine whether Mr. Ward was covered by the LINA policy at the time of his death.

**B.**     *DOES THE POLICY QUALIFY AS A LIFE INSURANCE POLICY?*

Mrs. Ward contends that the LINA policy is a life insurance policy rather than a health and accident policy because it does not provide any coverage for sickness. Further, she argues that the Louisiana Revised Statutes mandate that Mr. Ward's life insurance coverage could not terminate until the expiration of the period for which his premiums were paid, but not in excess of thirty-one days.

LINA responds that <u>Daigle v. Travelers Ins. Co.</u>, 421 So. 2d 302 (La. App. 1st Cir. 1982), conclusively determines that the LINA policy is *not* a life insurance policy. Because it is not a life insurance policy, the terms of the policy rather than section 22:176 of the Louisiana Revised Statutes control when coverage ended under the policy. As such, coverage ended October 3, 1992, the first premium due date following Mr. Ward's employment termination.

The parties do not dispute that the LINA policy covers loss of life, limbs, members, speech, hearing as well as paralysis. The issue is whether coverage for "loss of life" qualifies the policy as a life insurance policy for purposes of the Louisiana Insurance Code. In resolving this issue, we turn first to the Revised Statutes. The insurance code defines life and accident insurance as follows:

> (1) Life. Insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this Code, the transacting of life insurance includes the granting of annuities or survivorship benefits; additional benefits, including the acceleration of life or endowment or annuity benefits in advance of the time they would otherwise be payable, in the event of death by accident; additional benefits in event of total and permanent disability of the insured; and optional modes of settlement of proceeds.
> (2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.

LA. REV. STAT. § 22:6(1),(2). It cannot be ignored that the definition of life insurance includes the phrase "in the event of death by accident," and the health and accident definition includes the phrase

5

"death by accident." The issue then arises what did the legislature intend by the seemingly conflicting definitions.

We answer this question only after resorting to the rules regarding statutory construction. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." LA. CIV. CODE art. 10. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." LA. CIV. CODE art. 12. "Law on the same subject matter must be interpreted in reference to each other." LA. CIV. CODE art. 13.

We are not convinced that the legislature intended to sweep accidental death policies which exist independently of life insurance policies within the class of policies called "life insurance" policies. Compare LA. REV. STAT. § 22:6(1) with § 22:6(2). Reading the definitions together, we cannot conclude that an independent accidental death policy qualifies as both a life insurance policy and an accident policy. The legislature could not have intended to give insurers a choice regarding the applicable classification when the classifications trigger different obligations for the insurer and different protections for the insured. Because the two insurance policies invoke different protections, the "accidental death" phrase contained in the two definitions must apply to different situations. We are convinced that the accidental death phrase in the life insurance definition refers to an accidental death provision contained within a life insurance policy, which grants additional benefits under the policy. However, when accidental death benefits are presented in a separate and independent policy, the appropriate classification is a "health and accident" policy, rather than a life insurance policy.

6

Our conclusion is supported by the holding in Daigle v. Travelers Ins. Co., 421 So. 2d 302 (La. App. 1st cir. 1982), on which the district court relied.[1]  In Daigle, the court held that an accidental death and dismemberment policy was separate and distinct from the life insurance policy. 421 So. 2d at 304.  The plaintiff in Daigle argues that the accidental death and dismemberment policy should be classified as life insurance rather than health and accident insurance.  The plaintiff directed the court's attention to the phrase in the life insurance definition that refers to additional benefits "in the event of death by accident."  Additionally, the plaintiff contended that the AD&D policy was an adjunct to the life insurance policy because the AD&D policy was available only for coverage under certain group life policies.  The appellate court agreed with the district court that the two policies were "separate and distinct, and had different purpose."  The district court identified several differences between the policies: (1) different beneficiary designation forms, (2) the payroll deductions were at different rates, and (3) the premiums were deducted individually for the two policies.  Further, the district court noted that coverage under the AD&D policy did not require

---

[1]We note that while we find Daigle persuasive authority on this issue, we are not bound by the decision of one of several conflicting state appellate courts when seeking to resolve an issue involving the interpretation of a state statute.  See Transcontinental Gas, 953 F.2d at 988 (noting that we are not bound by state appellate decision but will not disregard them unless convinced that the state's highest court would rule otherwise).  Our duty is to predict how the highest state court would resolve the issue.  Thus, though we reach the same conclusion as the court in Daigle we do so because the decision was correct, not because Daigle was "controlling" precedent.  We reject as unpersuasive the reasoning of the courts in American Health & Life Ins. v. Binford, 511 So. 2d 1250, 1253 (La. App. 2d Cir. 1987) (without addressing the definition of health and accident insurance, the court reasoned that an accidental death and dismemberment policy purchased contemporaneously with a home mortgage was "life insurance" because life insurance is insurance on human lives and for insurances appertaining thereto or connected therewith) and Barnewold v. Life Ins. Co. of North America, 633 F. Supp. 432, 436 n.1 (E.D. La.), aff'd without opinion, 801 F.2d 396 (5th Cir. 1986) (in a footnote, labeling the LINA Personal Accident Insurance policies "life policies" although the applicable insurance classification was not at issue).  We cannot rely on Binford or Barnewold because both failed to address the apparent conflicting treatment of "accidental death" in the insurance definitions.

coverage under the life insurance policy. An employee could have AD&D coverage as long as he was "eligible" for coverage under the group life insurance policy even though he actually elected not to take the group life insurance policy. See also McKenzie v. Standard Life Ins. Co., 422 So. 2d 1387, 1388 (La. App. 1st Cir. 1982) (remanding the case for evaluation of the actual policy at issue because without the policy the court could not "determine if the accidental death coverage is *incidental to* a life insurance policy or is governed by the rules applicable to health and accident insurance policies" [footnote omitted and emphasis added]).

We are confident that the Louisiana Supreme Court would reach the conclusion fashioned by this Court and supported by Daigle and McKenzie. We hold that the presence of the "accidental death" phrase in the life insurance definition does not make a separate and distinct accidental death and dismemberment policy subject to the Insurance Code provisions regarding life insurance policies.

We also find that the "Personal Accident Insurance" policy in the present case was separate and distinct from the life insurance policy offered by Fleming. The "Personal Accident Insurance" required a separate application, was underwritten by a different insurer than the life insurance policy, and was contained in a separate document. Therefore, we agree with the district court and LINA's conclusion the "Personal Accident Insurance" policy is not a life insurance policy which would be covered by section 22:176.

## C. *WAS MR. WARD COVERED BY THE TERMS OF THE POLICY?*

Mrs. Ward also asserts that because the policy covered Mr. Ward until the premium due date of October 3, 1992, he had thirty days from October 3, 1992 to elect to convert the policy to an individual policy. Death during the conversion period triggered coverage, she argues. On the other

hand, LINA persists that coverage ended October 3, 1992, the first premium due date following Mr. Ward's employment termination.

Finding that the LINA policy is not a life insurance policy, we turn to the provisions of the policy to determine whether Mr. Ward was covered by the policy at the time of his death. Mr. Ward was eligible for coverage until he terminated his employment with Fleming on September 18, 1992. Even after his termination, the policy continued coverage until the date on which the premium payment was due, October 3, 1992. The policy provides that "[c]overage for any Insured will end on the first premium due date on which the Insured is no longer eligible;[2] *subject, however, to any applicable "Conversion Privilege" contained in this policy*." (Emphasis added.) In a separate provision, the policy also provides additional time within which a former employee may convert the group policy to an individual policy. The policy specifies the following: (1) that an employee who terminates employment and desires an individual policy must apply for a converted policy within thirty-one days after the group coverage ends and pay the first premium, (2) that the converted policy takes effect on the date group coverage ends or the date the employee applies for the converted policy, whichever is later, and (3) that the converted policy covers accidental death.

We conclude that the district court correctly found that the conversion language does not provide relief for Mrs. Ward. The thirty-one day conversion period is contingent upon the employee making an application for conversion. The policy provides that the converted policy takes effect on the date coverage ends *or the date the employee applies for the converted policy, whichever is later*. Without evidence of active steps taken to convert the policy, the thirty-one day period is not self-

---

[2]The policy lists several circumstances that remove an employee from the eligible status. The list includes the employee's non-payment of the premium, and the employee's failure to qualify as a member of a covered class.

effectuating. The conversion period is not intended to automatically extend coverage after group coverage ends. See Nicolson v. Life Ins. Co. Of Southwest, 783 F.2d 1316 (5th Cir. 1986) (finding that the grace period protects an insured whose policy otherwise would lapse; it is not intended to provide an extra month of insurance coverage for a person who voluntarily cancels coverage).

It is not disputed that Mr. Ward did not submit an application for conversion. In fact, the record does not demonstrate any active steps taken by Mr. Ward to convert the policy. Because the converted policy would have been effective on the application date (which was later than the date coverage ended), once Mr. Ward died it was too late for Mrs. Ward to seek coverage under the policy. Mrs. Ward has failed to offer facts showing that a genuine issue of material fact remains. Thus, the district court properly granted LINA's motion for summary judgment.

## CONCLUSION

For the forgoing reasons, we AFFIRM the decision of the district court granting LINA's motion for summary judgment.

10